# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| ALL ONE GOD FAITH, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:05cv1178 (PLF) |
| ) | |
| U.S. DEPARTMENT OF AGRICULTURE, ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |

_____

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    The OFPA and Certification of Agricultural Products
           as Organic under NOP Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

           1.    OFPA and the NOP Final Rules Govern the
                  Labeling of "Agricultural Products" as Organic. . . . . . . . . . . . . . . . . . . . 3

           2.    Past, Superceded Statements Regarding the Scope
                  of Products Eligible for NOP Certification. . . . . . . . . . . . . . . . . . . . . . . 4

           3.    The USDA's Current Statement Recognizes the
                  Eligibility of Personal and Body Care Products for
                  Labeling as Organic under the NOP. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    Plaintiffs' Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    THE COURT LACKS JURISDICTION TO REVIEW PLAINTIFFS' CLAIMS
    BECAUSE THEIR CLAIMS ARE NOW MOOT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    The August 2005 Response Renders All of Plaintiffs'
           Claims Moot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    The "Voluntary Cessation" Doctrine Does Not Apply. . . . . . . . . . . . . . . . . . . 12

      C.    Even if Applicable, Defendants Have Met Their Burden
           of Demonstrating Mootness under the Voluntary Cessation
           Exception. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.    EVEN IF THE COURT FINDS JURISDICTION, IT SHOULD DECLINE
    TO CONSIDER PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF. . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

FEDERAL CASES

Abu Ali v. Gonzales, - F.Supp.2d -, 2005 WL 2271838 (D.D.C. Sept. 19, 2005) . . . . . . . . . . 11

Adair v. England, 183 F. Supp.2d 31 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Allen v. Wright, 468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

American Bankers Ass'n v. National Credit Union Admin., 271 F.3d 262 (D.C. Cir. 2001) . . . 10

American Family Life Assurance Co. of Columbus v. FCC, 129 F.3d
625 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

Arizona Pub. Serv. Co. v. EPA, 211 F.3d 1280 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 10

Better Gov't Ass'n v. Dept. of State, 780 F.2d 86 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . 12

Building and Const. Dept. v. Rockwell Intern. Corp., 7 F.3d 1487 (10th Cir. 1993) . . . . . . . . 18

Northeastern Florida Chapter of the Assoc. Gen. Contractors of America
v. City of Jacksonville, 508 U.S. 656 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Chamber of Commerce of the United States of America v. Dept. of Energy,
627 F.2d 289 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

China Trade Center, L.L.C. v. Washington Metro. Area Tran. Auth.,
34 F. Supp.2d 67 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Church of Scientology of California v. United States, 506 U.S. 9 (1992) . . . . . . . . . . . . . . . . . 12

City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283 (1982) . . . . . . . . . . . . . . . . . . 12, 16, 19

Clarke v. United States, 915 F.2d 699 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Federal Express Corp. v. Airline Pilots Ass'n, 67 F.3d 961 (D.C. Cir. 1995) . . . . . . . . . . . . . . 9

Flynt v. Rumsfeld, 245 F.Supp.2d 94 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167 (2000) . . . . . . . . . . . 12, 13, 19

Fund for Animals v. Williams, 311 F.Supp.2d 1 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 12

Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F.Supp.2d 9
(D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Herbert v. Nat'l Academy of Sciences, 974 F.2d 192 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . 9

Hohri v. United States, 782 F.2d 227 (D.C. Cir. 1986), vacated on
other grounds, 483 U.S. 64 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Kowal v. MCI Communications Corp., 16 F.3d 1271 (D.C. Cir. 1994) . . . . . . . . . . . . . 6, 7, 8, 9

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Nat'l Treas. Employees Union v. United States, 101 F.3d 1423 (D.C. Cir. 1996) . . . . . . . . . . . . 9

National Black Police Ass'n v. District of Columbia, 108 F.3d 346
(D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

National Mining Assoc v. Dept. of Interior, 251 F.3d 1007 (D.C. Cir. 2001) . . . . . . . . . . . . . . 11

Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 18

Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627 . . . . . . . . . . . . . . . . . . . . . . . . . 15

Preiser v. Newkirk, 422 U.S. 395 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Princeton Univ. v. Schmid, 455 U.S. 100 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Scolaro v. D.C. Bd. of Elections and Ethics, 104 F. Supp.2d 18
(D.D.C. 2000), aff'd, 2001 WL 135857 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . 9

Sze v. I.N.S., 153 F.3d 1005 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. W.T. Grant Co., 345 U.S. 629 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Valley Forge Christian Coll. v. Americans United for Separation\
of Church and State, Inc., 454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Warth v. Seldin, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Weinberger v. Romero-Barcelo, 456 U.S. 305 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Wilson v. Seven Falls Co., 515 U.S. 277 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

FEDERAL STATUTES

5 U.S.C. §553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 11

7 U.S.C. § 6501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7 U.S.C. §§ 6501 - 6523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

7 U.S.C. § 6502(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7 U.S.C. § 6504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7 U.S.C. § 6518 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7 U.S.C. § 6521 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 2201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

OTHER FEDERAL SOURCES

7 C.F.R. § 200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

7 C.F.R. § 205.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

65 Fed. Reg. 80548 (Dec. 21, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Civil Procedure 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S. Const. Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 17

**INTRODUCTION**

Plaintiffs brought this case because, since 2003, they have manufactured and marketed certain personal and body care products labeled as organic under the Organic Foods Production Act of 1990 ("OFPA") (or claim to represent consumers who purchase such products) and they wish to continue doing so. Recently, the U.S. Department of Agriculture ("USDA") issued a statement that confirmed the eligibility of personal and body care products for labeling as organic under the OFPA. Because the USDA's latest statement provides plaintiffs with what they sued for, their claim is moot and should be dismissed for lack of subject matter jurisdiction.

Specifically, plaintiffs' Complaint challenges two now-superceded statements by the USDA regarding the types of products that may be certified as organic to USDA standards, arguing that these statements would have precluded their personal and body care products from certification under the OFPA had they been enforced against plaintiffs. Their challenge is premised not on the propriety of the statements' substance, but on the manner in which USDA released them – plaintiffs argue that the superceded statements were legislative rules that should have been issued in accordance with the notice-and-comment procedures of the Administrative Procedure Act ("APA"). See 5 U.S.C. § 553. Plaintiffs allege that because these superceded interpretations were issued without notice and comment, they were invalid under the APA. They sought to replace the superceded statements with a prior statement, also released without notice-and-comment, that they allege permitted the certification of their products.

Even if plaintiffs' claims ever had merit, plaintiffs have no need for a judicial determination of their claims now, because nothing in current USDA policy or statements precludes continued certification of their products, provided they continue to meet all other,

unchallenged requirements of the OFPA.  An August 2005 statement by USDA reversed the

challenged statements, in effect reinstating a prior USDA statement on which plaintiffs claim to

have relied in obtaining certification for personal and body care products.  That August 2005

statement gives plaintiffs everything which they requested, rendering their claims moot.  At the

least, it counsels against this Court exercising its equitable powers to grant plaintiffs any relief,

even if the Court has jurisdiction over plaintiffs' claims.  Accordingly, the Court should dismiss

plaintiffs' suit in its entirety.

## BACKGROUND

Plaintiffs filed this suit challenging two statements released by USDA in 2004 and 2005

related to the certification of certain products as organic to OFPA standards.  As detailed below,

those statements are no longer in effect, but have been instead superceded by a USDA statement

released on August 23, 2005.  Of these three statements, as detailed below, the current statement

is the only one currently relevant to the continued eligibility of personal and body care products

for certification under the NOP, and nothing in that guidance prevents such certification.

**A.     The OFPA and Certification of Agricultural Products as Organic under NOP
        Standards.**

The OFPA, 7 U.S.C. §§ 6501 - 6523, is a congressionally-created program that permits

the certification of certain "agricultural products" as organic by the National Organic Program

("NOP"), a component of the USDA created by the OFPA.  Congress adopted the OFPA "to

establish national standards governing the marketing of certain agricultural products as

organically produced products," "to assure consumers that organically produced products meet a

consistent standard," and "to facilitate interstate commerce in fresh and processed food that is

organically produced." 7 U.S.C. § 6501.  To carry out the OFPA, Congress instructed the

Secretary to "establish an organic certification program for producers and handlers of agricultural

products that have been produced using organic methods" provided by the OFPA.  Id. § 6503(a).

Further, "to assist in the development of standards for substances to be used in organic

production and to advise the Secretary on any other aspects of the implementation of" the OFPA,

Congress required the Secretary to establish the National Organic Standards Board ("NOSB").  7

U.S.C. § 6518.

Congress also required the Secretary to promulgate "regulations to carry out" the OFPA.

7 U.S.C. § 6521.  On December 21, 2000, the Secretary, after notice and comment, proposed

such regulations, see National Organic Program Final Rule, 65 Fed. Reg. 80548 (Dec. 21, 2000)

("NOP Final Rules"), which became effective on October 21, 2002.  The NOP Final Rules are

codified at 7 C.F.R. Part 205.

### 1.    OFPA and the NOP Final Rules Govern the Labeling of "Agricultural Products" as Organic.

The OFPA sets forth certain standards that the Secretary must use in certifying

"agricultural products" as organic.  "Agricultural products" governed by the Act are defined as

"any agricultural commodity or product, whether raw or processed, including any commodity or

product derived from livestock that is marketed in the United States for human or livestock

consumption."  Id. § 6502(1); see also NOP Final Rules, 7 C.F.R. § 205.2. (adopting same

definition).

An agricultural product is considered to be "organically produced" if it is produced and

handled in accordance with the requirements of the OFPA.  Id. § 6502(14).  With certain

exceptions not relevant here, the OFPA requires that an agricultural product meet these standards "[t]o be sold or labeled as an organically produced agricultural product." <u>See</u> 7 U.S.C. § 6504; <u>see also</u> <u>id.</u> §§ 6505, 6506. The NOP Final Rules incorporate this requirement by permitting the labeling of agricultural products as organic only if produced in compliance with the provisions of the OFPA and the NOP Final Rules. <u>See, e.g.</u>, 7 C.F.R. § 200.

## 2.     Past, Superceded Statements Regarding the Scope of Products Eligible for NOP Certification.

On May 2, 2002, USDA issued, without notice and comment, a "Policy Statement on National Organic Program Scope" that addressed the labeling of body care products. <u>See</u> Ex. 1("2002 Statement"). In response to questions regarding whether the NOP regulations also encompass certain products, including body care products, USDA stated that "the term consumption is not limited to products that are used for food." <u>Id.</u> Further, USDA stated that "[b]ecause these and other products, classes of products, and production systems contain agricultural products," such products "are eligible to seek certification under the NOP." <u>Id.</u>

In 2004, USDA issued, without notice and comment, a "Guidance Statement" that again addressed the certification of "personal care" products and "supercede[d]" the 2002 Statement. <u>See</u> Ex. 2("2004 Statement") at 1 & n.1. Here, USDA stated that "[b]ecause OFPA does not extend to cover nonagricultural products, and because USDA has no regulatory authority over such products," producers of certain products, including "[p]ersonal care products, body care products, cosmetics, and other related products" were not eligible for NOP certification. <u>Id.</u> at 2-3. USDA further stated that "[t]hese products are under the labeling and regulatory jurisdiction of the Food and Drug Administration (FDA) and may also be affected by applicable State laws."

-4-

Id. at 3.  USDA also stated that operations that had already labeled or marketed such products as organic and with the USDA seal would have until October 21, 2005, to use existing supplies, and that failure to comply could result in an enforcement action.  Id.

In April 2005, USDA issued, without notice and comment, a "USDA Response to NOSB Feedback on Issue Statements:  Fishmeal, Inerts, Antibiotics, and Scope of Authority."  See Ex. 3 ("April 2005 Response").   USDA stated that the April 2005 Response was to be considered "the most current guidance" on the issues addressed therein.  Id. at 1.  In the April 2005 Response, USDA addressed an NOSB recommendation that USDA consider whether new legislation and rules should be adopted to allow regulation of the labeling of organic personal care products, cosmetics, and dietary supplements.  In response, USDA stated:

> If legislation to amend OFPA with respect to personal care products and cosmetics is enacted, the NOP will enter into notice and comment rulemaking to propose standards for the production, handling, and labeling of these products. Until such time, these finished products may not display the USDA seal or be represented as NOP certified.  Only the organic agricultural ingredients contained in these products may be represented as certified to NOP standards.  These products may be certified to other, private standards.

Id. at 6.

### 3.   The USDA's Current Statement Recognizes the Eligibility of Personal and Body Care Products for Labeling as Organic under the NOP.

On August 23, 2005, in response to "inquiries regarding its current thinking on the issue of products that meet the NOP program standards for organic products based on content," USDA issued its current statement on the scope of products eligible for certification.  See Memorandum dated August 23, 2005 from Barbara C. Robinson to All USDA Accredited Certifying Agents regarding "Certification of agricultural products that meet NOP standards," ("August 2005

Statement") at 1, included as Attachment 1 to the Decl. of Barbara C. Robinson, attached at
Exhibit 4 ("Robinson Decl."); <u>see also</u> Robinson Decl. ¶ 5.  The August 2005 Statement
"clarif[ies] the NOP's position with respect to" the products that are eligible for certification and
was "provided to all of [USDA's] accredited certifying agents."[1]  August 2005 Statement at 1;
<u>see also</u> Robinson Decl. ¶ 4.  The Statement says:

> Operations currently certified under the NOP that produce agricultural products
> that meet the NOP standards to be labeled as organic and to carry the USDA
> organic seal, or which meet NOP standards to be labeled as "made with organic,"
> may continue to be labeled so long as they continue to meet NOP standards.

August 2005 Statement at 1; <u>see also</u> Robinson Decl. ¶4.  Further, with regard to products such
as "personal care products," which are made of agricultural products but are not intended to be
food products, the August 2005 Statement states:

> Businesses that manufacture and distribute such products may be certified under
> the NOP, and such products may be labeled as "100 percent organic," "organic" or
> "made with organic" so long as they meet NOP requirements.  Additionally,
> products that may be labeled "100 percent organic" or "organic" may also carry
> the USDA organic seal.

August 2005 Statement at 1; <u>see also</u> Robinson Decl. ¶4.

### B.    Plaintiffs' Allegations.

Plaintiff All One God Faith, Inc, d/b/a Dr. Bronner's Magic Soaps and d/b/a Dr.
Bronner's & Sun Dog's Magic, ("Dr. Bronner's") alleges it is a manufacturer and distributor of
soap, lotions, and balms marketed as organic and certified to NOP standards.  Complaint for
Declaratory and Injunctive Relief [docket no. 1] ("Complaint") at ¶ 2.  In addition, Dr. Bronner's

---

[1]  Certified agents are defined in the OFPA as those state or private entities "accredited by
the Secretary . . . for the purpose of certifying a farm or handling operation as a certified organic
farm or handling operation."  7 U.S.C. § 6502(3).

labels these personal and body care products with the "Certified Organic" USDA seal.  Id.
Plaintiff Organic Consumers Association ("OCA") claims to represent over 30,000 companies
and individuals.  Complaint ¶¶ 5, 13.  OCA claims that its membership includes "many
consumers who desire to purchase, among other things, personal and body care products"
certified as organic to NOP standards.  Id. ¶ 13; see also id. ¶ 13-14.

	None of plaintiffs' allegations addresses the August 2005 Statement, as the operative
Complaint in this matter was filed before the statement was released.  Plaintiffs' Complaint
alleges the following:[2]  The 2002 Statement "made clear that the producers of non-food finished
products made from agricultural ingredients could seek certification, under the NOP, of their
production operations and qualified products" and label their products as organic in compliance
with NOP standards.  Id. ¶ 3.  Dr. Bronner's alleges that, in reliance on the 2002 Statement, it
invested in ingredients and upgraded its operations to obtain NOP certification from a USDA-
accredited certifying agent.  Id. ¶¶ 4, 37-40.  From the date of its certification on July 30, 2003,
until present, Dr. Bronner's has used its certification to label its products as "Organic" or "Made
with Organic Ingredients," as certified to NOP standards, and with the USDA seal.  Id. ¶¶ 40-41.

	Plaintiffs claim that the 2004 Statement and April 2005 Response reversed the 2002
Statement, id. ¶ 69, and would have forced Dr. Bronner's and other producers to cease labeling
and marketing their personal and body care products as organic to NOP standards.  Id. ¶ 56-57,
70, 73.  Dr. Bronner's claims that it would have suffered economic harm if forced to do so.  Id.

---

[2]  Defendants merely restate the allegations contained in plaintiffs' Complaint because the
Court is required to assume the truth of a plaintiff's allegations in deciding a motion to dismiss.
See Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Defendants
make no admission as to the truth of any of plaintiffs' allegations.

¶¶ 58-59.  Plaintiffs further claim that consumers who want to purchase organic personal care products prefer to purchase those certified as meeting NOP standards.  Id. ¶ 60.  Nowhere in plaintiffs' Complaint do they allege that any products alleged to be eligible for certification were denied such certification at any time.

In the sole count of their Complaint, plaintiffs claim that the 2004 Statement and April 2005 Response were invalid under the APA.  Specifically, although plaintiffs accept the 2002 Statement as "a valid interpretation by USDA of its own regulations under NOP," id. ¶ 67, they maintain that the 2004 Statement and April 2005 Response were "substantive, legislative rules that were issued without notice or opportunity to comment" in violation of the APA, 5 U.S.C. § 553, and were therefore invalid.  Complaint ¶¶ 75-76.  Plaintiffs seek a declaration that the 2004 Statement and April 2005 Response were invalid and unenforceable and an injunction against their enforcement.  Id. at 26-27.  Plaintiffs seek no relief with respect to the August 2005 Statement.

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss a plaintiff's complaint where the Court "lack[s] jurisdiction over the subject matter."  When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the allegations of the complaint must be construed in favor of the pleader.  See Hohri v. United States, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 483 U.S. 64 (1987).  However, "plaintiff[s]' factual allegations in the complaint . . . will bear less scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F.Supp.2d 9, 13-14 (D.D.C. 2001).  The Court

-8-

need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions.  See Nat'l Treas. Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  When evaluating a motion for lack of subject matter jurisdiction, the Court may consider materials beyond the pleadings.  See Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Scolaro v. D.C. Bd. of Elections and Ethics, 104 F. Supp.2d 18, 22 (D.D.C. 2000) (J. Kennedy), aff'd, 2001 WL 135857 (D.C. Cir. 2001).  Under these well-established standards, dismissal of plaintiffs' Complaint is warranted because the August 2005 Statement renders plaintiffs' claims moot.

I.    **THE COURT LACKS JURISDICTION TO REVIEW PLAINTIFFS' CLAIMS BECAUSE THEIR CLAIMS ARE NOW MOOT.**

Article III of the U.S. Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'"  Allen v. Wright, 468 U.S. 737, 750 (1984).  This is a "bedrock requirement."  Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982).  As the Supreme Court noted in Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26 (1976), "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  Id. at 37; see also Federal Express Corp. v. Airline Pilots Ass'n, 67 F.3d 961, 963 (D.C. Cir. 1995) ("The federal courts are powerless to decide any matter unless it involves a case or controversy.").  A variety of doctrines of justiciability – including standing, ripeness, and mootness – define the limits of Article III's case or controversy requirement.  See Nat'l Treas. Employees Union, 101 F.3d at 1427 ("In an attempt to give

-9-

meaning to Article III's case-or-controversy requirement, the courts have developed a series of principles termed 'justiciability doctrines,' among which are standing, ripeness, mootness, and the political question doctrine.").

The mootness doctrine, derived from Article III's case or controversy requirement, limits federal courts "to deciding 'actual, ongoing controversies.'"  Clarke v. United States, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc) (quoting Honig v. Doe, 484 U.S. 305, 317 (1988)); accord Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (federal court has no "power to render advisory opinions [or] . . . 'decide questions that cannot affect the rights of litigants in the case before them.'" (citation omitted)).  Even where litigation poses a live controversy when filed, the mootness doctrine requires a federal court to refrain from deciding it if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than speculative chance of affecting them in the future."  Clarke, 915 F.2d at 701 (quoting Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C. Cir. 1990)).  To save a case from mootness, "the ongoing injury must be more than a 'remote possibility,' not 'conjectural,' more than speculative.'"  American Family Life Assurance Co. of Columbus v. FCC, 129 F.3d 625, 628 (D.C. Cir. 1997) (quoting Warth v. Seldin, 422 U.S. 490, 507 (1975)).

### A.    The August 2005 Response Renders All of Plaintiffs' Claims Moot.

The D.C. Circuit has repeatedly found cases moot where a federal agency has revised or eliminated the very policy provision that a plaintiff challenges.  See Arizona Pub. Serv. Co. v. EPA, 211 F.3d 1280, 1295-96 (D.C. Cir. 2000) (holding that challenge to EPA rule was moot where agency issued clarification modifying challenged provision); see also American Bankers Ass'n v. National Credit Union Admin., 271 F.3d 262, 274 (D.C. Cir. 2001) (dismissing claim as

-10-

moot where federal agency had "eliminated the allegedly unlawful provision and there is no indication [it] will revert to its past [policy]" (internal quotes omittted)); <u>National Mining Assoc v. Dept. of Interior</u>, 251 F.3d 1007, 1011 (D.C. Cir. 2001) (holding that challenge to regulations was moot where agency adopted new regulations eliminating challenged provisions).   That is the situation here.

       As described above, the August 2005 Statement supercedes the earlier 2004 Statement and April 2005 Response, and confirms plaintiffs' ability to label and market qualifying personal and body care products as organic products under the NOP.  Thus, adjudicating plaintiffs' claim would give them no relief which they have not already obtained by issuance of the August 2005 Statement.  <u>Cf.</u> <u>Abu Ali v. Gonzales</u>, – F.Supp.2d –, 2005 WL 2271838 at * 2 (D.D.C. Sept. 19, 2005) (dismissing case where Court may no longer provide meaningful relief to plaintiff, "[e]ven assuming that this Court could have provided meaningful relief to petitioners at some point in the past").  Plaintiffs' request for relief is limited to a declaration that USDA was required to utilize the APA's notice and comment procedures, 5 U.S.C. § 553, before issuing the 2004 Statement and April 2005 Response and an injunction against the enforcement of these statements.  None of this relief would provide anything of substance to plaintiffs now.  Plaintiffs sought the requested relief to obtain reinstatement of the 2002 Statement, which they allege permitted the organic certification of personal and body care products such as those manufactured by Dr. Bronner's. The August 2005 Statement, like the 2002 Statement, confirms that such products may in fact be certified as organic, provided they meet the other requirements of the NOP and OFPA.  Whatever contrary pronouncements were contained in the 2004 Statement and April 2005 Statement, they have been superceded, rendering the requested injunction and any declaration that the APA

-11-

required notice and comment for the 2004 Statement and April 2005 Response unnecessary and meaningless.  Dismissal is therefore appropriate, because plaintiffs "'obtained everything that they could recover . . . by a judgment of this court in their favor.'"  See Fund for Animals v. Williams, 311 F.Supp.2d 1, 8 (D.D.C. 2004) (quoting Better Gov't Ass'n v. Dept. of State, 780 F.2d 86, 91 (D.C. Cir. 1986)); see also Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending [] that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed." (internal quotes omitted)).

Because the challenged statements have now been superceded and do not govern the products that USDA currently states are properly certifiable under the NOP, and the current August 2005 Statement permits the certification of the products at issue here (just as does the 2002 Statement that plaintiffs sought to reinstate), plaintiffs' claims are moot.

**B.    The "Voluntary Cessation" Doctrine Does Not Apply.**

The exception to the mootness doctrine providing that "'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice,'" see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 189 (2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982), is inapplicable to the facts of this case.

The D.C. Circuit has expressed skepticism about the applicability of this exception to a coordinate branch of government.  In Clarke, the D.C. Circuit, sitting en banc to decide a case involving a challenge to an act of Congress, explained that, in early cases, the voluntary cessation doctrine "focused on preventing a private defendant from manipulating the judicial process by

-12-

voluntarily ceasing the complained of activity, and then seeking a dismissal of the case, thus

securing freedom to return to its old ways." 915 F.2d at 705 (internal quotes omitted). The D.C.

Circuit, in broad terms that encompass both the legislative and executive branches of the federal

government, expressed "serious doubts whether . . . in the absence of overwhelming evidence

(and perhaps not then), it would seem appropriate for the courts either to impute such

manipulative conduct to a coordinate branch of government, or to apply against that branch a

doctrine that appears to rest on the likelihood of a manipulative purpose." Id.; cf. National Black

Police Ass'n v. District of Columbia, 108 F.3d 346, 353 (D.C. Cir. 1997) ("[T]he courts accord

the executive branch the same presumption of legitimate motive as is given the legislative

branch."). Indeed, government officials are presumed to act properly, in good faith, and to obey

the law. Adair v. England, 183 F. Supp.2d 31, 61 (D.D.C. 2002) (quoting China Trade Center,

L.L.C. v. Washington Metro. Area Tran. Auth., 34 F. Supp.2d 67, 70-71 (D.D.C. 1999)). This

Court should have similarly "serious doubts" about the application of this exception to the

USDA.

    This is not a case where defendants adhered to a policy through years of litigation, and

then on the eve of trial, unaccountably reversed position in an effort to "manipulat[e] the judicial

process." Clarke, 915 F.2d at 705; see Friends of the Earth, Inc., 528 U.S. at 192 (noting that

generally, "by the time mootness is an issue, the case has been brought and litigated often . . . for

years" and justifying voluntary-cessation exception because to "abandon the case at an advanced

stage may prove more wasteful than frugal"). This case is still at an extremely early stage – prior

to the instant motion, the only substantive event in this case was the filing of plaintiffs'

Complaint. The parties have not invested significant time or resources in litigating this suit.

-13-

Indeed, far from representing a "last ditch" effort to avoid the legal consequences of the agency's actions, the August 2005 Statement was issued, as the statement itself explains, in response to public inquiries regarding USDA's "current thinking on the issue of products that meet the NOP program standards . . . ." August 2005 Statement at 1. Changes wholly independent of the litigative process do not fall under voluntary cessation exception. See Sze v. I.N.S., 153 F.3d 1005, 1008-09 (9th Cir. 1998) (voluntary cessation doctrine does not apply when the challenged activity stops for reasons unrelated to litigation). Nor did USDA reverse a longstanding policy. Here, defendants have done nothing more than return to a statement they issued three years before plaintiffs filed suit. Compare August 2005 Statement with 2002 Statement.

Moreover, not only does the August 2005 Statement contain, in effect, the same statement as the USDA's 2002 Statement, but it has broad application beyond the plaintiffs in this case. The August 2005 Statement was sent not just to plaintiffs' certifying agents, but to all certifying agents, was posted on the USDA's website, Robinson Decl. ¶ 4, and applies not just to plaintiffs here, but to all seeking certification of products such as plaintiffs'. See generally August 2005 Statement. These circumstances indicate that USDA issued the August 2005 Statement in pursuit of its ongoing regulatory mission, not to manipulate this Court into dismissing this case and to free it to return to its earlier, challenged behavior.

In light of the presumption of good faith for government officials, see Adair, 183 F. Supp.2d at 61, and the D.C. Circuit's "serious doubts" regarding whether the voluntary cessation exception's applies to coordinate branches of government, see Clarke, 915 F.2d at 705, this Court should find that the voluntary cessation exception has no bearing to this case.

**C.      Even if Applicable, Defendants Have Met Their Burden of Demonstrating Mootness under the Voluntary Cessation Exception.**

Assuming the applicability of the voluntary cessation exception to the mootness doctrine, notwithstanding the arguments made above, defendants here have adequately demonstrated that, even under this exception, dismissal of plaintiffs' Complaint as moot is warranted.  "[A] court may conclude that voluntary cessation has rendered a case moot if the party urging mootness demonstrates that (1) 'there is no reasonable expectation that the alleged violation will recur' and (2) 'interim relief or events have completely or irrevocably eradicated the effects of the alleged violations.'"  Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627, 631-32 (D.C. Cir. (citations omitted), judgment vacated and appeal dismissed as moot by 284 F.3d 125 (D.C. Cir. 2002).

Here, the August 2005 Statement "hardly suggests either the manipulative purpose, or the risk of recurrence, that drives the voluntary cessation exception."  See Clarke, 915 F.2d at 706. As stated above, the August 2005 Statement contains the same position as the 2002 Statement, which was issued three years before this litigation began and which plaintiffs concede was proper.  That the USDA previously held the same position expressed again in the August 2005 Statement undercuts any suggestion that the amended policy might be retracted following dismissal of this case.  Cf. Nat'l Black Police Ass'n, 108 F.3d at 349 (finding that there was "no evidence . . . to suggest that the D.C. Council might repeal the new legislation and reenact [the prior policy]" where "enactment of the new legislation does not represent a sudden shift in position on the part of the Council").

Unlike cases in which courts have declined to find mootness, the USDA has not

evidenced any intent to retract the August 2005 Statement.  Cf. Northeastern Florida Chapter of the Assoc. Gen. Contractors of America v. City of Jacksonville, 508 U.S. 656, 662 (1993) (applying voluntary cessation exception to find case not moot where "[t]here is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so"); City of Mesquite, 455 U.S. at 298 n.11 (noting that "the city has announced just such an intention" when determining that case was not moot due to likelihood of reenactment of city ordinance); see also id. at 296 n.* (White, J., concurring) (finding City of Mesquite holding consistent with Princeton Univ. v. Schmid, 455 U.S. 100, 102 (1982) – in which Court dismissed challenge to old regulations as moot when regulations were substantially amended during course of appeal – because "[u]nlike the city of Mesquite, Princeton gave no indication that it desired to return to the original regulatory scheme and [that it] would do so absent a judicial barrier").

Even if the USDA did something in the future to call into doubt the August 2005 Statement, a prospect itself that is entirely speculative, the terms of any possible future statement and the procedures used to issue it cannot be predicted, are wholly speculative, and therefore do not warrant judicial review at this time.  See American Family Life Ins. Co., 129 F.2d at 628 (case not saved from mootness unless "ongoing injury [is] more than a 'remote possibility,' not 'conjectural,' more than speculative.'"); cf. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (injury-in-fact may not be conjectural or hypothetical).  The Court should not rely on such speculation to find a reasonable expection of recurrence.

Further, defendants satisfy the "interim effects" prong.  Where a plaintiff seeks prospective, but not retrospective relief, the second "interim events" prong of this analysis does not bar a finding of mootness.  See National Black Police Ass'n, 108 F.3d at 350.  Not only is

-16-

there no reasonable expectation that USDA will return to the challenged conduct, but the August 2005 Statement completely eradicates the alleged effects of the 2004 Statement and April 2005 Response.  Plaintiffs' own Complaint shows that no enforcement action was ever taken against plaintiffs on the basis of the superceded statements, and plaintiffs allege no retrospective or ongoing injury from the superceded statements. They seek only prospective relief in the form of an injunction against enforcement of the superceded statements, relief which has been rendered wholly unnecessary now that neither statement has any prospective force in light of the August 2005 Statement.

## II.    EVEN IF THE COURT FINDS JURISDICTION, IT SHOULD DECLINE TO CONSIDER PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF.

Even if the Court found that plaintiffs' claims regarding the superceded USDA statements do present an existing case or controversy sufficient to support Article III jurisdiction, the Court should apply prudential doctrines that cabin its discretion and decline to decide the substantive questions posed by plaintiffs' challenge to the superceded statements.  See Chamber of Commerce of the United States of America v. Dept. of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980) (doctrine of prudential mootness – which involves "not the power to grant relief, but the court's discretion in the exercise of that power" – applies when given controversy, though "not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of goverment counsel the Court to stay its hand, and to withhold relief it has the power to grant"); Flynt v. Rumsfeld, 245 F.Supp.2d 94, 108 (D.D.C. 2003) (Friedman, J.) (despite jurisdiction, declining to decide constitutional claims for equitable relief under prudential mootness doctrine).

-17-

As discussed in the previous section, plaintiffs here seek forward-looking declaratory and injunctive relief barring defendants from enforcing two superceded statements regarding the scope of the products eligible for certification under the NOP. Plaintiffs allege no past injury, they seek no retrospective relief, and both the requested declaratory judgment and injunction are equitable remedies. In particular, the Declaratory Judgment Act, 28 U.S.C. § 2201(a) is an "enabling" act that confers discretion on a Court "rather than an absolute right upon the litigant." Wilson v. Seven Falls Co., 515 U.S. 277, 287 (1995); see also 28 U.S.C. § 2201(a) ("[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration . . . ." (emphasis added)). District courts, therefore, may decline to exercise their discretion to entertain a claim for declaratory relief "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton, 515 U.S. at 282; see also Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1019-20 (D.C. Cir. 1991) ("Declaratory relief, like other forms of equitable relief, is discretionary."). Similarly, a district court always has the discretion to refrain from granting injunctive relief. See, e.g., Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982) ("It goes without saying that an injunction is an equitable remedy . . . . The grant of jurisdiction . . . hardly suggests an absolute duty to [act] under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law").

Given that the August 2005 Statement puts to rest plaintiffs' concerns about whether personal and body care products may continue to be certified under the NOP, this Court should refrain from considering plaintiffs' claims for equitable relief. This is especially so where, the government takes action to obviate the need for a judicial remedy. See Building and Const.

-18-

Dept. v. Rockwell Intern. Corp., 7 F.3d 1487, 1492 (10th Cir. 1993) ("[P]rudential mootness

arises out of the court's general discretion in formulating prospective equitable remedies,

especially with regard to the government of the United States where considerations of . . . comity

for coordinate branches of government come into play." (internal citations omitted)); see also

City of Mesquite, 455 U.S. at 289 (defendants' "abandonment [of the challenged practice] is an

important factor bearing on the question whether a court should exercise its power to enjoin the

defendant from renewing the practice"); Chamber of Commerce, 627 F.2d at 292 ("[A]lthough

the actions were not moot, no abuse of discretion has been demonstrated by the trial court's

refusal to award injunctive relief." (quoting United States v. W.T. Grant Co., 345 U.S. 629, 635-

36 (1953)).  Prudence clearly dictates that there is no reason alleged by plaintiffs here – or even

discernable from the four corners of their Complaint – that would warrant this Court's

consideration of the broad, forward-looking equitable relief plaintiffs request.

There are, moreover, no countervailing considerations that would justify continued

litigation.  Instead, this case is at an extremely early stage, and dismissal now will not void a

significant investment of time, effort, and resources by the parties in the litigation.  See Friends

of the Earth, Inc., 528 U.S. at 192 (discussing mootness in terms of cases that have "been brought

and litigated often . . . for years" and justifying voluntary-cessation exception because "to

abandon the case at an advanced state may prove more wasteful than frugal").  As discussed

above, there is no past injury to redress.  Plaintiffs own allegations make clear that they were

never subject to any enforcement action based upon the 2004 Statement and April 2005

Response.  Finally, if the USDA actually took the entirely-speculative action of reversing the

August 2005 Statement, plaintiffs could then take issue with the substance or any ensuing

-19-

statement or the manner in which it was issued by bringing a subsequent suit (which following the filing of a complaint, would be at the same stage of litigation as this case was when USDA issued the August 2005 Statement). Deferring any potential judicial review until after the USDA takes the now-speculative action of reversing the August 2005 Statement would also allow the Court to review the action based upon concrete facts unknown at this time, such as the specific content of any new statement and the process used to issue it.

These factors counsel against judicial review of plaintiffs' Complaint in light of the August 2005 Statement. Thus, even if the Court finds it has continued jurisdiction over this matter, the Court should refuse to hear plaintiffs' claims under the prudential mootness doctrine.

## CONCLUSION

For the reasons stated above, defendants respectfully request that the Court dismiss plaintiffs' Complaint in its entirety.

Dated: September 23, 2005                    Respectfully submitted,

                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             KENNETH L. WAINSTEIN
                                             United States Attorney

                                             ___/S/ Michael Hyde_____
                                             JAMES J. GILLIGAN
                                             Assistant Director
                                             MICHAEL HYDE (D.C. Bar No. 462685)
                                             Trial Attorney
                                             Federal Programs Branch, Civil Division
                                             U.S. Department of Justice
                                             P.O. Box 883
                                             20 Massachusetts Ave., N.W., Room 7132
                                             Washington, D.C. 20044
                                             Telephone: (202) 514-2205
                                             Facsimile:  (202) 616-8470
                                             E-Mail:  michael.hyde@usdoj.gov
                                             Attorneys for Defendants